**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:13CV533-FDW-DSC**

| | |
|---|---|
| **CORDARA G. MATTOX,** ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #13) and "Memorandum in Support ..." (document #13-1), both filed March 3, 2014, and Defendant's "Motion for Summary Judgment" (document #14) and "Memorandum in Support ..." (document #15), both filed May 2, 2014. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on January 21, 2014, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

# I. PROCEDURAL HISTORY

On June 18, 2010, Plaintiff filed an application for a period of disability, child's insurance benefits and Supplemental Security Income ("SSI") alleging that he was unable to work on January 1, 2007. (Tr. 180-90).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing which was held on March 7, 2012. (Tr. 29-57, 107-14, and 119-27).

On May 24, 2012, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 10-28). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 16). The ALJ also found that Plaintiff suffered from borderline intellectual functioning ("BIF") and mood disorder, which were severe impairments within the meaning of the regulations (Tr. 16-17), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17-21). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform:

> [A] full range of work at all exertional levels but with the following non-exertional limitations: he should not have concentrated exposure to hazards such as moving machinery and unprotected heights. He should not have more than occasional public contact. He can perform unskilled work activity.

(Tr. 21). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged. The ALJ further found that Plaintiff's testimony

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

concerning the intensity, persistence and limiting effects of his symptoms was credible only to the extent that it was consistent with the RFC set forth above. (Tr. 22). The ALJ then found that Plaintiff had no past relevant work. (Tr. 23).

The ALJ then properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ('V.E.") identified jobs (grocery bagger, laundry worker and kitchen helper) that Plaintiff could perform. The V.E. also stated that 16,800 of those jobs existed in North Carolina. (Tr. 24). The ALJ found Plaintiff capable of performing work existing in significant numbers in the national economy, and concluded that he was not disabled during the relevant period. Id.

Plaintiff filed a timely Request for Review by the Appeals Council. By notice dated July 23, 2013, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-6).

Plaintiff filed the present action on September 24, 2013. He assigns error to the ALJ's conclusion at Step Three that he did not meet Listing 12.05C (intellectual disability).[3] See Plaintiff's "Memorandum in Support ..." at 8-14 (document #13-1). The parties' cross-Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review

---

[3]Effective September 3, 2013, the Agency replaced the term "mental retardation" in Listing 12.05C with "intellectual disability" since the former term "has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." Change In Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013).

of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so

4

long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled at any time.[4] Plaintiff's only assignment of error concerns the ALJ's determination that he failed to meet Listing 12.05C related to intellectual disability. The ALJ specifically found that Plaintiff failed to meet this Listing. (Tr. 18-20). Substantial evidence supports that finding.

Claimants are deemed disabled whenever they meet or medically equal the criteria of a Listing. 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926. Claimants bear both the burden of production and the burden of proof on this issue. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). In order to sustain this burden, claimants "must present medical findings equal in severity to all the criteria" for the pertinent Listing. Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original), superseded by statute on other grounds.

In order to prove that he meets Listing 12.05C, Plaintiff must show: (1) "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., . . . before age 22"; (2) "[a] valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, App.

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

I §§ 12.05, 12.05C. Substantial evidence supports the ALJ's finding that Plaintiff failed to prove the first element.[5]

The ALJ found that Plaintiff did not sustain his burden of establishing deficits in adaptive functioning. (Tr. 25). Listing 12.05C requires Plaintiff to prove that he had "deficits in adaptive functioning initially manifested during the developmental period, i.e., before age 22." 20 C.F.R. Part 404, Subpart P, App. I § 12.05. In order to sustain this burden, Plaintiff must prove that he suffered deficits in adaptive functioning both (1) during the developmental period and (2) during the subsequent period when he claims to have been disabled. See, e.g., Cogdell v. Astrue, No. 8:10-105, 2010 WL 6243317, at *6 (D.S.C. Dec. 20, 2010) (Maj. J. Mem. & Rec.), adopted, 2011 WL 1085120 (D.S.C. March 22, 2011).

The regulation lists the following illustrative examples of "adaptive functioning: cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Part 404, Subpart P, App. I § 12.00C.1).

In Hancock v. Astrue, 667 F.3d 470, 476 (4th Cir. 2012), the Fourth Circuit affirmed the ALJ's finding that the claimant had no deficits in adaptive functioning. The Court emphasized that the claimant "has the ability to shop, pay bills, and make change; that she takes care of three small grandchildren at a level of care that satisfies the Department of Social Services; that she does the majority of her household's chores, including cooking and baking; that she is attending school to obtain a GED [although she was unable to successfully take any GED tests]; and that she does

---

[5]Defendant concedes that the ALJ erred in finding that Plaintiff had not met the third element of Listing 12.05C. Document #15 at 4. Since Plaintiff had burden of proving that he met all three elements of the Listing, the ALJ's conclusions as to the second and third elements are not relevant on appeal.

puzzles for entertainment." Id.

"Although the Fourth Circuit [in Hancock] found these characteristics sufficient to support a finding of an absence of deficits in adaptive functioning, the Fourth Circuit did not intimate that those (or comparable) capabilities constituted the minimum that would suffice . . . . Accordingly, although Hancock provides a valuable comparison standard for assessing an ALJ's findings regarding the adaptive functioning requirement, it does not identify an outer boundary in this context." Nelson v. Astrue, No. 1:09-cv-0017, 2012 WL 373364, at *7 n.13 (M.D.N.C. Feb. 3, 2012) (Mag. J. Mem. & Rec.) (emphasis in original). Substantial evidence supports the ALJ's finding that Plaintiff did not establish deficits in his adaptive functioning here.

The ALJ found (Tr. 19) that Plaintiff's mother reported to psychologist Dr. Lenore Wilkinson that he could follow four step instructions (Tr. 361). He could listen to a lecture or sermon of at least fifteen to twenty minutes and comprehend the gist of what was being said (id.); knew basic emergency information (id.); could complete a basic job application (id.); and was independent in his personal care and cared about his appearance. When his mother went to the grocery store, Plaintiff could care for his six year old sister who suffered from cerebral palsy and a seizure disorder (Tr. 357 & 361). He cooked foods such as fried chicken (Tr. 361); performed household chores including taking out the trash, vacuuming, and washing and ironing his own clothes (id.); did not need help with making purchases or telling time (Tr. 361 & 362); was independent in taking the bus (Tr. 362); and learned to drive (id.). Plaintiff's mother reported to Dr. Wilkinson that he was able to make long distance calls. (Tr. 362). As the ALJ correctly states (Tr. 19), the regulation provides that a claimant who is able to engage in these kinds of activities does not suffer from deficits in adaptive functioning within the meaning of Listing 12.05C. See

7

20 C.F.R. Part 404, Subpart P, App. I § 12.00C.1 (no deficits in adaptive functioning if claimant can clean, cook, take public transportation, care appropriately for his grooming and hygiene, and use the telephone).

The ALJ also correctly noted that Plaintiff completed all the requirements for a high school diploma (Tr. 16, referring to Tr. 343). Plaintiff's mother also reported to Dr. Wilkinson that he could make change for purchases (Tr. 19, referring to Tr. 361; see also Tr. 280). Hancock, 667 F.3d at 476 (no deficits in adaptive functioning because claimant could make change, take care of small children, perform household chores such as cooking, and attend school to obtain a GED [even though she was not able to successfully take any GED tests]).

Dr. Wilkinson diagnosed Plaintiff with BIF and the ALJ adopted that diagnosis (Tr. 15 & 18, referring to Tr. 362). The ALJ appears to have done so based in part upon his assessment of Plaintiff's communication and interpersonal skills during the hearing. (Tr. 40-41, 50). For this reason and for the reasons discussed above, substantial evidence supports the ALJ's finding that Plaintiff has BIF. As the Fourth Circuit has recognized, BIF exceeds the standard for mental retardation set out in Listing 12.05C. See, e.g., Guiton v. Colvin, 546 F. App'x 137, 139 (4th Cir. 2013); Hodgson v. Astrue, No. 4:07-cv-00529, 2008 WL 4277168, at *6 n.4 (N.D. Tex. July 30, 2008) ("[T]he fact that [an examining psychologist] diagnosed [the claimant] with [BIF], despite her IQ scores that were below the expected range for [BIF] and within the range of mild mental retardation, is consistent with the Commissioner's position that [the claimant] did not have the necessary deficits in adaptive functioning to satisfy all of the criteria for Listing 12.05C").

This Court has held that a claimant who was functionally illiterate and placed in special education classes did not have deficits in adaptive functioning within the meaning of Listing

8

12.05C. Caldwell v. Astrue, No. 1:09-cv-00233, 2011 WL 4945959, at *4 (W.D.N.C. Oct. 18, 2011) (substantial evidence supported adjudicator's finding that claimant did not meet adaptive functioning element of Listing 12.05C notwithstanding facts that claimant "could not read or write" and attended special education classes); see also, e.g., Libby v. Astrue, No. 2:10-cv-292-JAW, 2011 WL 2940738, at *12 (D. Me. July 19, 2011) (affirming finding that claimant who attended special education classes had no deficits in adaptive functioning), aff'd, No. 11-2066, 2012 WL 1149352 (1st Cir. Apr. 5, 2012).

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #13) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: May 5, 2014

David S. Cayer
United States Magistrate Judge